**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | | CA 05-0412-C |
| | : | |
| JOHNSON HOMES OF MERIDIAN, INC. and MICHELLE HAMPTON, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on defendant Michelle Hampton's motion to dismiss or, in the alternative, motion to abstain and/or stay this declaratory judgment action (Doc. 4), the response of St. Paul Fire & Marine Company (hereinafter, "St. Paul") to Hampton's motion (Doc. 5), and the parties' oral arguments on October 4, 2005.[1] The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings, including disposition of this motion. (*See* Doc. 9 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this

_____

[1]    Plaintiff's supplemental motion to dismiss, filed on October 21, 2005 (Doc. 11), is **MOOT** based upon the contents of this memorandum opinion and order.

case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including the trial, and order the entry of a final judgment, and conduct all post-judgment proceedings."); Doc. 10 (order of reference made by Chief United States District Judge Callie V.S. Granade on October 20, 2005)) Upon consideration of the contents of the briefs and the arguments of counsel, the Court **DENIES** Michelle Hampton's motion to dismiss for want of subject-matter jurisdiction but **GRANTS** her alternative request to abstain from deciding this declaratory judgment action in favor of the parallel state action presently pending in the Circuit Court of Choctaw County, Alabama. In line with the district court's determination in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1329 & 1332 (11th Cir. 2005), this Court **ORDERS** that the instant declaratory judgment action be **DISMISSED** in favor of the parallel state action presently pending in the Choctaw County Circuit Court.[2]

## FINDINGS OF FACT

1.     On July 7, 1999, Michelle Hampton filed suit in the Circuit Court of Choctaw County, Alabama against Johnson Mobile Homes and Chandeleur

---

[2]     Any appeal from this memorandum opinion and order and judgment must be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 9 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

Homes. (Doc. 4, Exhibit A, COMPLAINT) The *ad damnum* clause of the complaint read as follows: "WHEREFORE, Plaintiff hereby demands $74,000.00 from Defendants. Plaintiff does not seek nor will she accept more than $74,000.00." (*Id*. at 6)

2.      On October 13, 2000, Chandeleur Homes, Inc. filed a motion to compel arbitration. (*See* Doc. 4, Exhibit B) Some four days later, on October 17, 2000, Johnson Mobile Homes commenced a Chapter 11 proceeding in the United States Bankruptcy Court for the Southern District of Mississippi by the filing of a voluntary petition for bankruptcy. (*See* Doc. 4, Exhibit C, ¶ 2)

3.      On February 1, 2001, Hampton and others filed motions to lift the stay and for adequate protection. (*See* Doc. 4, Exhibit C) United States Bankruptcy Judge Edward R. Gaines entered an order on June 20, 2001, granting the motions to lift the stay. (Doc. 4, Exhibit D, ORDER ("The movants are entitled to pursue their pending state court claims to determine liability."))

4.      On January 10, 2002, the Choctaw County Circuit Court granted Chandeleur's motion to compel arbitration and ordered Hampton to arbitrate her claims "in accordance with the arbitration clause in the warranty for Chandeleur." (Doc. 4, Exhibit E)

5.      An arbitration was conducted in the Choctaw County courthouse on July 23, 2002 by Terry L. Butts, Esquire, Arbitrator. (Doc. 4, Exhibit F) Butts

3

entered an arbitration award on March 23, 2004, same reading, in relevant part, as follows:

> The arbitrator finds for the plaintiff on the issue of breach of contract and negligent setup of the mobile home against Johnson Mobile Homes, Inc. After due consideration of the testimony and the relevant law, the arbitrator finds for the plaintiff and assess her damages at $62,095.00. Further, the costs of this action and the expenses incurred by the plaintiff and her counsel, including that part of the arbitrator's fees and expenses paid by plaintiff ($6,500.00), are taxed and ordered to be paid by the defendant, Johnson Mobile Homes, Inc. to the plaintiff. Plaintiff is to pay arbitrator the remaining $6,500.00 owed on arbitration fees and expenses . . . .

(Doc. 4, Exhibit F, at 4) On March 31, 2004, the Choctaw County Circuit Court entered an order granting Hampton's motion to confirm the arbitration award. (Doc. 4, Exhibit G)

6.      On July 13, 2004, Hampton filed a Process of Garnishment in the Circuit Court of Choctaw County, Alabama in an attempt to satisfy the arbitration judgment entered in her favor. (*See* Doc. 4, Exhibit H) The garnishee identified in the process of garnishment is St. Paul; the judgment amount is listed as $62,095.00 and costs of $11,241.89 are listed, for a total of $73,336.89. (*Id.*) In the writ of garnishment, Hampton requested interest on the $73,336.89. (*Id.*)

7.      On August 18, 2004, St. Paul filed a motion to dismiss the process of garnishment, arguing that garnishment was not the appropriate

4

process for the collection of the judgment and that Hampton instead should have filed a separate action against it and its insured, Johnson Homes. (Doc. 4, Exhibit I) St. Paul's motion was denied by the trial court on March 10, 2005. (Doc. 4, Exhibit J) St. Paul filed a petition for writ of mandamus in the Alabama Supreme Court on March 18, 2005 (Doc. 4, Exhibit K); the petition was denied by order entered on May 4, 2005 (Doc. 4, Exhibit L).

8.      While the petition for writ of mandamus was pending, the Choctaw County Circuit Court stayed the garnishment proceedings. (*See* Doc. 4, Exhibit M) On May 18, 2005, Hampton filed a motion to lift stay in the Circuit Court of Choctaw County, Alabama (*id*.); St. Paul's opposed the motion to lift stay on May 25, 2005 (Doc. 4, Exhibit N). In its opposition, St. Paul alternatively requested that the Choctaw County Circuit Court stay all proceedings pending resolution of declaratory judgment proceedings. (*Id*.; *see also id*. at 2 ("St. Paul intends to file a complaint for declaratory relief in the United States District Court for the Southern District of Mississippi against Johnson Homes of Meridian, Inc.[], which is St. Paul's insured and the Defendant in this action, disputing the amount of the insurance proceeds owed to Johnson, if any, and which Plaintiff seeks to garnish in this proceeding. St. Paul has not yet filed the declaratory judgment complaint because Johnson has filed bankruptcy, and under Section 362 of the Bankruptcy Code St. Paul must

5

obtain relief from the bankruptcy stay before filing its declaratory judgment action.")) The trial court granted Hampton's motion to lift stay on the same date that St. Paul filed its opposition to that motion. (*See* Doc. 4, Exhibit O) Accordingly, St. Paul, on June 6, 2005, filed a motion to vacate the trial court's order lifting the stay. (*Id*.) After that date, the parties each filed pleadings in the Circuit Court of Choctaw County, Alabama during June[3] and July of 2005 (Doc. 4, Exhibits P-Q & S-U)

9.     By order dated June 16, 2005, the Choctaw County Circuit Court set St. Paul's motion to vacate for a hearing on September 15, 2005. (Doc. 4, Exhibit R)

10.     On July 15, 2005, St. Paul filed a complaint for declaratory relief, pursuant to 28 U.S.C. § 2201, in this Court against Johnson Homes of Meridian, Inc. and Hampton. (Doc. 1) In the complaint, St. Paul specifically invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1332, the diversity statute. (*Id*., ¶ 4) Hampton filed her motion to dismiss on August 18, 2005 (Doc. 4) and this motion was joined on August 26, 2005 (Doc. 5).

## CONCLUSIONS OF LAW

### A.     Diversity Jurisdiction.

---

[3]     On June 29, 2005, United States Bankruptcy Judge Gaines granted St. Paul's motion for relief from stay to file a declaratory judgment action. (*See* Doc. 4, Exhibit U, Attached ORDER)

1.      The "'operation of the Declaratory Judgment Act is procedural only[,]'" *Household Bank v. JFS Group*, 320 F.3d 1249, 1253 (11th Cir. 2003), quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937), and, therefore, the party seeking relief under the Act must set forth facts establishing that there is an independent basis for the exercise of federal jurisdiction, *id.* (citation omitted); *see also Wendy's International, Inc. v. City of Birmingham*, 868 F.2d 433, 435 (11th Cir. 1989) ("At the outset we note that the Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts but rather 'is operative only in respect to controversies which are such in the constitutional sense. . . . Thus the operation of the Declaratory Judgment Act is procedural only.' [] Consequently, a party seeking declaratory relief must satisfy the same jurisdictional requirements prerequisite to the bringing of other suits."). Accordingly, in its complaint for declaratory relief St. Paul avers that jurisdiction is proper is this Court based upon the diversity statute, 28 U.S.C. § 1332. (Doc. 1, ¶ 4)

2.      "'Federal courts are courts of limited jurisdiction.'" *Federated Mut. Ins. Co. v. McKinnion Motors, LLC,* 329 F.3d 805, 807 (11th Cir. 2003), quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). In order for a federal court to exercise diversity jurisdiction, the amount in controversy must exceed $75,000, exclusive of interest and costs, and the

action must be between citizens of different states.  28 U.S.C. § 1332(a)(1).  In

a declaratory judgment action, "'the amount in controversy is the monetary value

of the object of the litigation from the plaintiff's perspective.'"  *Federated Mut.*

*Ins. Co., supra*, quoting *Cohen v. Office Depot, Inc.,* 204 F.3d 1069, 1077

(11th Cir. 2000); *see also Employers Mut. Cas. Co. v. All Seasons Window &*

*Door Manufacturing, Inc.,* 2005 WL 2205345, *2 (S.D.Ala. 2005) ("'When a

plaintiff seeks injunctive or declaratory relief, the amount in controversy is the

monetary value of the object of the litigation from the plaintiff's perspective.'").

      3.     Where it appears to a "legal certainty" that a plaintiff's claim is

for less than the jurisdictional amount, diversity jurisdiction does not exist.

*Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1472 (11th Cir. 1997) ("The

maximum remedy sought by the Baltins was the vacatur of the arbitration award

of $36,284.69.  Diversity jurisdiction did not exist because it was a 'legal

certainty' that the amount in controversy was less than $50,000, the amount

required for federal diversity jurisdiction at the time the Baltins filed suit."),

*cert. denied*, 525 U.S. 841, 119 S.Ct. 105, 142 L.Ed.2d 84 (1998); *see also*

*Federated Mut. Ins. Co., supra*, 329 F.3d at 807 ("Generally, '[i]t must appear

to a legal certainty that the claim is really for less than the jurisdictional amount

to justify dismissal.'"); *Owners Ins. Co. v. James*, 295 F.Supp.2d 1354, 1358

(N.D.Ga. 2003) ("Dismissal of a case brought under 28 U.S.C. § 1332 is proper

where the pleadings make it clear to a legal certainty that the claim is really for
less than the jurisdictional amount.").

> Generally speaking, the judicially established legal-certainty test makes it very difficult for a defendant to secure a dismissal of a case on the ground that it does not appear to satisfy the statutory jurisdictional amount requirement. Only three situations clearly meet the legal-certainty standard for purposes of defeating the court's subject matter jurisdiction: (1) when the terms of a contract limit the plaintiff's possible recovery; (2) when a specific rule of substantive law or measure of damages limits the amount of money recoverable by the plaintiff; and (3) when independent facts show that the amount of damages was claimed by the plaintiff merely to obtain federal court jurisdiction.

*Owners Ins. Co., supra,* 295 F.Supp.2d at 1358-1359 (internal citations omitted).

4.     It is clear to the Court in this case that the value of the object of

the litigation from St. Paul's perspective is the value to it of a declaration that

it does not have to indemnify Hampton with respect to any claims asserted

against Johnson Homes of Meridian, Inc. in the underlying lawsuit. In point of

fact, there are two underlying actions. With respect to the first, Hampton

successfully arbitrated her claims against Johnson; the arbitrator assessed

damages in favor of Hampton and against Johnson totaling $62,095.00 for

Johnson's breach of contract and negligent setup along with costs and expenses

incurred by plaintiff. The arbitrator's award was reduced to a judgment by the

Circuit Court of Choctaw County, Alabama by order dated March 31, 2004. Thereafter, Hampton filed an ancillary garnishment proceeding in the Choctaw County Circuit Court on July 13, 2004.[4] The affidavit in support of the writ of garnishment filed by Hampton is signed by her attorney and reflects the judgment amount to be $62,095.00 and costs of $11,241.69, for a total claimed of $73,336.69 with interest. Hampton's attorney admitted during oral argument that the interest requested in the writ of garnishment is the amount provided by statute on judgments received, that is, 12% interest. *See* Ala.Code § 8-8-10 ("Judgments for the payment of money, other than costs, if based upon a contract action, bear interest from the day of the cause of action, at the same rate of interest as stated in said contract; all other judgments shall bear interest at the rate of 12 percent per annum, the provisions of Section 8-8-1 to the contrary notwithstanding; provided, that fees allowed a trustee, executor, administrator, or attorney and taxed as part of the cost of the proceeding shall bear interest at a like rate from the day of entry."). Inasmuch as Alabama requires by statute that a plaintiff's attorney must make and file with the clerk of the court in which the judgment was entered an affidavit stating the amount

---

[4]      "Garnishment is a statutory action, and can result only in a judgment against the garnishee, or in a judgment discharging him." *Randolph v. Little*, 62 Ala. 396, 1878 WL 1186, at *2 (Ala. 1878).

due from the defendant, or his assignee, in order to obtain a writ of garnishment,
Ala.Code § 6-6-391, and the affidavit in this case requested $73,336.69 plus
interest, and interest has accrued at the rate of 12% per annum since March 31,
2004, this Court cannot find to a legal certainty that the claim at issue in this
declaratory judgment action is really for less than the jurisdictional amount.
*Hollingsworth & Co. v. Hammond*, 30 Ala. 668, 1857 WL 443, *1 (Ala. 1857)
("We think the doctrine must be regarded as settled in this State, that wherever
a debt or money liability exists, as contradistinguished from mere damages for
the breach of a contract, interest is recoverable as an incident to such debt, from
the time of its maturity."); *see Jim Davis & Co. v. Albuquerque Fed. Savings
& Loan Ass'n*, 536 So.2d 55, 57 (Ala. 1988) ("Under the law of garnishment,
the money sought 'must be due absolutely and without contingency.'"). In other
words, the Court finds that interest is an essential ingredient of Hampton's
garnishment claim against St. Paul, "rather than a mere accessory demand," and
therefore, such interest does not fall within the statutory exclusion contained
in 28 U.S.C. § 1332(a) and can be included as part of the amount in controversy.
14B C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND
PROCEDURE § 3712(1998); *see also id*. at p. 282 ("Finally, there is the
situation, typified by Brown v. Webster itself, in which the interest is regarded
as merely one of the elements of damage and is considered a part of the amount

in controversy. For example, in a suit against a surety to recover on a supersedeas bond, by which the surety was bound to pay the judgment, interest, and costs, the amount in controversy is the whole sum due from the surety, since interest was an element in calculating the obligation of the bond. Interest also may be included when it can be considered a penalty and therefore a damage element. Illustratively, if the judgment in one action includes interest, the amount in controversy in a suit on the judgment is measured by the amount of that first judgment, including the interest.").

5.      In light of the foregoing, this Court may exercise diversity jurisdiction in this declaratory judgment action. St. Paul's jurisdictional victory is only pyrrhic, however, as this Court finds that it need abstain from ruling upon the merits presented by this declaratory judgment action in favor of the parallel action pending in the Circuit Court of Choctaw County, Alabama.

**B.      Abstention.**

6.      While Hampton makes mention, in her brief, of *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), and *Ameritas Variable Life Ins. Co. v. Roach*, *supra*, in relation to her discussion of the Declaratory Judgment Act, she quickly shifts focus and concentrates her abstention arguments on "the *Colorado Abstention Doctrine*."

(Doc. 4, at 7-12) Not surprisingly, in response, St. Paul concentrates solely upon the *Colorado River* "exceptional" circumstances test, turning a blind eye to *Brillhart*, *Wilton*, and *Ameritas Variable Life Ins. Co.* (Doc. 5, at 3-8) Though this Court will initially begin with the *Colorado River* decision and note, albeit parenthetically, why abstention is proper even under the "exceptional" circumstances test, the focus of this Court's analysis falls properly upon *Brillhart, Wilton*, and *Ameritas Variable Life Ins. Co.*

      7.    "*Colorado River* addresses the circumstances in which federal courts should abstain from exercising their jurisdiction because a parallel lawsuit is proceeding in one or more state courts." *Ambrosia Coal & Construction Co. v. Pages Morales*, 368 F.3d 1320, 1327 (11th Cir. 2004).

> The Court [in *Colorado River*] found that abstention was not appropriate under the traditional abstention doctrines, which involve "considerations of proper constitutional adjudication and regard for federal-state relations[.]" Nevertheless, the Supreme Court acknowledged that principles other than these traditional abstention doctrines might permit federal courts to abstain from exercising otherwise proper jurisdiction "in situations involving the contemporaneous exercise of concurrent jurisdictions[.]" "These principles[,]" the Court explained, "rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."
>
> For example, when multiple federal district courts might contemporaneously litigate concurrent jurisdictions, although "no precise rule has evolved, the general principle is to avoid duplicative litigation."

This general principle does not apply, however, when the duplicative litigation arises between state and federal courts. As the Supreme Court recognized, "[g]enerally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[.]" Federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them." A policy permitting federal courts to yield jurisdiction to state courts cavalierly would betray this obligation. Thus, federal courts can abstain to avoid duplicative litigation with state courts only in "exceptional" circumstances.

Without fashioning a bright-line test for determining when the existence concurrent state and federal cases warrants federal court abstention, the Supreme Court discussed several circumstances that district courts may consider. It noted that "the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." It further remarked that a federal court may consider "the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums." Finally, the Supreme Court cautioned that "[o]nly the clearest of justifications will warrant dismissal" of the federal court action.

*Id*. at 1328-1329 (internal citations, ellipses and footnote omitted).

8.    In *TranSouth Financial Corp. v. Bell*, 149 F.3d 1292, 1294-1295 (1998), the Eleventh Circuit summarized *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) and set forth the following six factors which fall among those which a district court should consider in determining whether exceptional circumstances exist:

"(1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order

14

in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties."

*Moorer v. Demopolis Waterworks & Sewer Board*, 374 F.3d 994, 997 (11th Cir. 2004), quoting *TranSouth, supra*; s*ee also Wilton, supra*, 515 U.S. at 285-286, 115 S.Ct. at 2142 ("As it had in *Colorado River*, the Court [in *Moses H. Cone*] articulated nonexclusive factors relevant to the existence of such exceptional circumstances, including the assumption by either court of jurisdiction over a res, the relative convenience of the fora, avoidance of piecemeal litigation, the order in which jurisdiction was obtained by the concurrent fora, whether and to what extent federal law provides the rules of decision on the merits, and the adequacy of state proceedings."); *Noonan South, Inc. v. Volusia County*, 841 F.2d 380, 381 (11th Cir. 1988) ("The [Supreme] Court [in *Colorado River*] suggested that federal courts consider a number of factors in determining the appropriateness of dismissal: (1) whether one of the courts has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the potential for piecemeal litigation; and (4) the order in which the forums obtained jurisdiction. [] In *Moses H. Cone* . . . the Court repeated the four factors listed in *Colorado River* . . . [and] mentioned two additional factors: (5) whether federal or state law will be applied; and (6) the

adequacy of each forum to protect the parties' rights.").

> The decision whether to dismiss does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. The weight of each factor varies on a case-by-case basis, depending on the particularities of that case. One factor alone can be the sole motivating reason for the abstention.

*Moorer, supra,* 374 F.3d at 997 (internal quotation marks and citations omitted).[5]

---

[5]     As heretofore indicated, this Court will engage in but a brief analysis of this case in reference to the six-factor exceptional-circumstances abstention test since the appropriate test for abstention in this declaratory judgment action is that set out in *Brillhart, Wilton* and *Ameritas Variable Life Ins. Co.*, not the exceptional-circumstances test of *Colorado River* and *Moses H. Cone*. Nevertheless, the Court finds it significant under the exceptional-circumstances test that federal law does not provide any rules of decision on the merits; rather, this case will be decided solely by reference to Alabama contract and garnishment law. Moreover, this Court is confident that the state procedures applicable can adequately protect the rights of the parties, St. Paul making no argument to the contrary. Finally, this case, in some form or fashion, has been pending in the Circuit Court of Choctaw County, Alabama now for some six years. While St. Paul correctly points out that it has only been a party with respect to the writ of garnishment filed by Hampton in July of 2004, it has known since the institution of Hampton's suit against Chandeleur Homes and Johnson Homes of Meridian, Inc., St. Paul's insured, of Hampton's claims and, in fact, provided Johnson Homes with "defense under reservation of rights[.]" (Doc. 1, ¶ 9) The only surprise for St. Paul was Hampton's filing of a writ of garnishment seeking satisfaction, from St. Paul, of the judgment she obtained against Johnson Homes, same long being recognized by the Alabama Supreme Court as "'an ancillary proceeding seeking satisfaction of a prior judgment, and not an original civil suit.'" *Rice v. State Farm Fire & Cas. Co.*, 628 So.2d 582, 583 (Ala. 1993) (citation omitted). It is clear from St. Paul's briefs and pleadings filed in opposition to the garnishment proceeding that it felt garnishment was the improper vehicle for Hampton to satisfy her judgment against Johnson Homes and that Hampton, instead, should have filed an original civil suit against it and its insured. St. Paul filed its motion to dismiss the garnishment on August 18, 2004, and litigated that issue all the way to the Alabama Supreme Court. As well, St. Paul has pressed other issues in state court until filing this action in this Court on July 15, 2005, some eleven months after requesting dismissal of the writ of garnishment in the Choctaw County Circuit Court.

16

9.      The Supreme Court in *Wilton, supra*, explained, at length, why *Brillhart* informs a district court's abstention decision in the declaratory judgment context as well as why the exceptional circumstances test of *Colorado River* and *Moses H. Cone* does not inform such decision.

> London Underwriters contend that the *Brillhart* regime, under which district courts have substantial latitude in deciding whether to stay or to dismiss a declaratory judgment suit in light of pending state proceedings (and need not point to "exceptional circumstances" to justify their actions), is an outmoded relic of another era. We disagree. Neither *Colorado River*, which upheld the dismissal of federal proceedings, nor *Moses H. Cone*, which did not, dealt with actions brought under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (1988 ed., Supp. V). Distinct features of the Declaratory Judgment Act, we believe, justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the "exceptional circumstances" test of *Colorado River* and *Moses H. Cone*. No subsequent case, in our view, has called into question the application of the *Brillhart* standard to the *Brillhart* facts.

> Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. On its face, the statute provides that a court "*may*

---

Accordingly, St. Paul has not only known about, monitored  and participated in the state case, by providing a defense to Johnson Homes, since the underlying suit was instituted against Chandeleur Homes and Johnson Homes in 1999 but also, since August of 2004, has directly participated in the ancillary garnishment proceeding. The length of time this case has been in the Circuit Court of Choctaw County, Alabama, when combined with the other relevant factors that federal law will provide no rules on the decision on the merits and that Alabama's procedures will adequately protect the rights of the parties, speaks volumes for abstention even under the clearly inapplicable *Colorado River* and *Moses H. Cone* exceptional-circumstances abstention doctrine.

declare the rights and other legal relations of any interested party seeking such declaration[.]" The statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface. We have repeatedly characterized the Declaratory Judgment Act as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." When all is said and done, we have concluded, "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power."

Acknowledging, as they must, the unique breadth of this discretion to decline to enter a declaratory judgment, London Underwriters nonetheless contend that, after *Colorado River* and *Moses H. Cone*, district courts lack discretion to decline to hear a declaratory judgment suit at the outset. We are not persuaded by this distinction. London Underwriters' argument depends on the untenable proposition that a district court, knowing at the commencement of litigation that it will exercise its broad statutory discretion to decline declaratory relief, must nonetheless go through the futile exercise of hearing a case on the merits first. Nothing in the language of the Declaratory Judgment Act recommends London Underwriters' reading, and we are unwilling to impute to Congress an intention to require such a wasteful expenditure of judicial resources. If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action.

We agree, for all practical purposes, with Professor Borchard, who observed half a century ago that "[t]here is . . . nothing automatic or obligatory about the assumption of 'jurisdiction' by a federal court" to hear a declaratory judgment action. By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to

> qualifying litigants. Consistent with the nonobligatory nature of
> the remedy, a district court is authorized, in the sound exercise of
> its discretion, to stay or to dismiss an action seeking a
> declaratory judgment before trial or after all arguments have
> drawn to a close. In the declaratory judgment context, the normal
> principle that federal courts should adjudicate claims within their
> jurisdiction yields to considerations of practicality and wise
> judicial administration.

*Wilton, supra*, 515 U.S. at 286-288, 115 S.Ct. at 2142-2143 (internal footnote

omitted and internal citations omitted unless included).

10. In *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S.Ct.

1173, 86 L.Ed. 1620 (1942), "[a]n insurer, anticipating a coercive suit, sought

a declaration in federal court of nonliability on an insurance policy. The District

Court dismissed the action in favor of pending state garnishment proceedings,

to which the insurer had been added as a defendant." *Wilton, supra*, 515 U.S. at

282, 115 S.Ct. at 2140. *Brillhart* is virtually identical to this action except for

the fact that Hampton named St. Paul as the garnishee/defendant in the ancillary

garnishment proceeding, rather than adding it as a defendant.

> [T]his Court[, in *Brillhart*,] held that[] "[a]lthough the District
> Court had jurisdiction of the suit under the Federal Declaratory
> Judgment Act, it was under no compulsion to exercise that
> jurisdiction." The Court explained that "[o]rdinarily it would be
> uneconomical as well as vexatious for a federal court to proceed
> in a declaratory judgment suit where another suit is pending in a
> state court presenting the same issues, not governed by federal
> law, between the same parties." The question for a district court
> presented with a suit under the Declaratory Judgment Act, the
> Court found, is "whether the questions in controversy between the

19

parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court."

*Brillhart* makes clear that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites. Although *Brillhart* did not set out an exclusive list of factors governing the district court's exercise of this discretion, it did provide some useful guidance in that regard. The Court indicated, for example, that in deciding whether to enter a stay, a district court should examine "the scope of the pending state court proceeding and the nature of defenses open there." This inquiry, in turn, entails consideration of "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." Other cases, the Court noted, might shed light on additional factors governing a district court's decision to stay or to dismiss a declaratory judgment action at the outset. But *Brillhart* indicated that, at least where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in "[g]ratuitous interference," if it permitted the federal declaratory action to proceed.

*Wilton, supra*, 515 U.S. at 282-283, 115 S.Ct.at 2140-2141 (internal citations

to *Brillhart* omitted).

11.   In *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331

(2005), the Eleventh Circuit recently identified a list of non-exhaustive factors

which district courts may consider before making a determination regarding

whether to abstain from a declaratory judgment action in favor of a parallel state

court action:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (2) whether the judgment in the federal declaratory action would settle the controversy; (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue; (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"--that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable; (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; (6) whether there is an alternative remedy that is better or more effective; (7) whether the underlying factual issues are important to an informed resolution of the case; (8) whether the state court is in a better position to evaluate those factual issues than is the federal court; and (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action. Our list is neither absolute nor is any one factor controlling; these are merely guideposts in furtherance of the Supreme Court's admonitions in *Brillhart* and *Wilton*.

*Id*.

12.     The coverage issue, which is the focus of the instant declaratory judgment action, is clearly a defense available to St. Paul in the ancillary garnishment proceeding which has been the subject of litigation between it and Ms. Hampton in the state courts of Alabama since August of 2004. Alabama courts, which decided unanimously that a writ of garnishment is the proper procedural vehicle for Ms. Hampton to attempt to satisfy her judgment against

Johnson Homes, have a particularly strong interest in deciding the Alabama contract issues raised in the federal declaratory action[6] in the state courts given their collective decisions on the procedural vehicle question and the length of their association with the facts surrounding the underlying action against Johnson Homes.[7] Certainly, the instant action would not serve to clarify the legal relations at issue in a manner that cannot also be accomplished in the state courts of Alabama. Rather, as indicated in *Brillhart*, where, as here, there is pending in state court another suit involving the same relevant parties and presenting the opportunity for ventilation of the same state law issues it would be sheer gratuitous interference by this Court to allow the declaratory judgment action to proceed. Stated differently, this Court finds that allowing the instant declaratory judgment action to proceed would increase the friction between federal and state courts and improperly encroach on state jurisdiction. It is imperative that this Court not race the state courts to *res judicata*, at the behest

---

[6]     Obviously, therefore, no federal common or statutory law dictates a resolution of the instant declaratory judgment action.

[7]     While a judgment in this action on the coverage issue would effectively settle the controversy between Hampton and St. Paul, so too will a judgment by the Circuit Court of Choctaw County, Alabama in the ancillary garnishment proceeding. The coverage issue is best decided by the Alabama courts, not only because Alabama law is the only law applicable but also because the Circuit Court of Choctaw County, Alabama has lived with the underlying proceeding since 1999 and the ancillary proceeding the last year.

of St. Paul, given that this case involves the application of state law and is best decided by the state courts of Alabama. Accordingly, this Court abstains from this declaratory judgment action in favor of the parallel proceeding in the Circuit Court of Choctaw County, Alabama to which St. Paul has been a litigating party since August of 2004.

<u>**CONCLUSION**</u>

The Court **DENIES** Michelle Hampton's motion to dismiss this declaratory judgment action for want of jurisdiction but **GRANTS** her alternative motion to abstain from proceeding to a judgment on the merits in this action in favor of the parallel proceeding in the Circuit Court of Choctaw County, Alabama (Doc. 4). The Court **ORDERS** that the instant declaratory judgment action be **DISMISSED** in favor of the parallel state action presently pending in the Circuit Court of Choctaw County, Alabama.

**DONE** this the 24th day of October, 2005

   /S/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**